# United States Court of Appeals
# for the Federal Circuit

---

**UNILOC USA, INC., UNILOC LUXEMBOURG S.A.,**
*Plaintiffs-Appellants*

**UNILOC 2017 LLC,**
*Plaintiff*

**v.**

**APPLE INC.,**
*Defendant-Appellee*

**ELECTRONIC FRONTIER FOUNDATION,**
*Intervenor-Appellee*

---

2021-1568, 2021-1569, 2021-1570, 2021-1571, 2021-1573

---

Appeals from the United States District Court for the Northern District of California in Nos. 3:18-cv-00358-WHA, 3:18-cv-00360-WHA, 3:18-cv-00363-WHA, 3:18-cv-00365-WHA, 3:18-cv-00572-WHA, Judge William H. Alsup.

---

Decided: February 9, 2022

---

AARON JACOBS, Prince Lobel Tye LLP, Boston, MA, argued for plaintiffs-appellants. Also represented by JAMES J. FOSTER.

DOUG J. WINNARD, Goldman Ismail Tomaselli Brennan & Baum LLP, Chicago, IL, argued for defendant-appellee. Also represented by ALAN ERNST LITTMANN, MICHAEL T. PIEJA; CATHERINE CARROLL, DAVID P YIN, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC; MARK D. SELWYN, THOMAS GREGORY SPRANKLING, Palo Alto, CA.

ALEXANDRA HELEN MOSS, Electronic Frontier Foundation, San Francisco, CA, argued for intervenor-appellee. Also represented by AARON DAVID MACKEY.

─────────────────────

Before LOURIE, MAYER, and CUNNINGHAM, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* LOURIE.

Dissenting opinion filed by *Circuit Judge* MAYER.

LOURIE, *Circuit Judge*.

Uniloc USA, Inc., and Uniloc Luxembourg, S.A. (collectively, "Uniloc") appeal from a decision of the United States District Court for the Northern District of California refusing to seal certain documents in several related cases between Uniloc and Apple Inc. ("Apple"). *See Uniloc USA, Inc. v. Apple, Inc.*, 508 F. Supp. 3d 550 (N.D. Cal. 2020) ("*Decision*"). For the reasons provided below, we vacate and remand.

BACKGROUND

This is Uniloc's second appeal regarding the sealing of documents. In its first appeal, Uniloc attempted to defend requests to seal matters of public record, such as quotations of this court's opinions and a list of patent cases Uniloc had filed. *See Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351 (Fed. Cir. 2020). The district court correctly applied its local rules to reject these requests in their entirety and to reject Uniloc's request for reconsideration. This

court affirmed the district court's rulings in nearly all respects.

We also held, however, that the district court must conduct a more detailed analysis on whether confidential licensing information of certain third-party licensees of Uniloc's patents should be sealed. *Id.* at 1363–64. As for this subset of information, we remanded for the district court to "make particularized determinations as to whether and, if so, to what extent, the materials of each of these parties should be made public." *Id.* at 1364. The present appeal is narrowly directed to this third-party licensing information.

One threshold issue raised by this court in its remand order was whether Uniloc's financier, Fortress Credit Co. LLC ("Fortress"), should be considered a third party or a Uniloc-related entity for purposes of sealing. Uniloc moved to seal or redact third-party documents that revealed licensing terms, licensees' names, amounts paid, and dates. One document at issue was a Fortress investment memorandum that contained Fortress's investment criteria and other third-party licensing information. Apple did not oppose Uniloc's motion. The Electronic Frontier Foundation ("EFF") moved to intervene to argue in favor of unsealing, and the district court granted its motion.

The district court denied Uniloc's motion. The court explained that "[t]he public has every right to account for . . . anyone holding even a slice of the public grant." *Decision* at 554. It added that "patent licenses carry unique considerations" that bolster the public's right of access, including the valuation of patent rights. *Id.* at 555. The court further stated that "[t]he public has an interest in inspecting the valuation of the patent rights" reflected in Uniloc's licenses. *Id.* It then suggested that disclosure of patent licensing terms would facilitate "up-front cost evaluations of potentially infringing conduct," "driv[e] license values to a more accurate representation of the

technological value of the patent," and help "inform reasonable royalties in other courts." *Id.*

The district court also determined that "the dates and dollar amounts involved in Uniloc's patent licenses go to the heart of the primary dispute, that of Uniloc's standing (or lack of) to sue." *Id.* (internal quotation marks omitted). The court then ordered that the licensing information, including the identity of the licensees, be unsealed in full.

With respect to the Fortress investment memorandum, the district court found that Fortress did not comply with Local Rule 79-5(e)(1) of the Northern District of California because Uniloc filed a declaration in support of sealing, instead of Fortress, as required by the rules. *Id.* On this basis alone, the court denied Uniloc's request to seal this document.

Uniloc filed the present notice of appeal to this court. We have jurisdiction pursuant to the collateral order doctrine. *See Uniloc 2017*, 964 F.3d at 1357–58.

## DISCUSSION

This appeal involves the standard for sealing court records, not substantive issues of patent law. Thus, Ninth Circuit law applies. *Uniloc 2017*, 964 F.3d at 1357. "In the Ninth Circuit, a district court's decision to seal or unseal court records is reviewed for abuse of discretion." *Id.* "A district court abuses its discretion if it bases its decision on an erroneous legal standard or clearly erroneous findings of fact." *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1221 (Fed. Cir. 2013) (internal quotation marks omitted). A district court also abuses its discretion if the reviewing court "has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Id.*

Sealing may be appropriate to keep records from being used "as sources of business information that might harm a litigant's competitive standing." *Nixon v. Warner*

*Commc'ns, Inc.*, 435 U.S. 589, 598 (1978).  In the Ninth Circuit, "compelling reasons" are needed to seal judicial records related to a dispositive motion.  *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).  Such compelling reasons include preventing the release of trade secrets.  *Id.*

Uniloc and Apple both argue that the district court erred in failing to follow this court's remand instructions to make particularized determinations as to whether third-party licensing information should be sealed.  The parties contend that the court erroneously applied heightened scrutiny to requests to seal licensing information.  Apple adds that such information can rise to the level of a trade secret, which is the type of information that the Ninth Circuit has deemed sealable.  Uniloc cites various cases from the district court and the Ninth Circuit sealing similar types of information.  *See, e.g.*, *Uniloc 2017 LLC v. Google LLC*, 508 F. Supp. 3d 556, 575 n.23 (N.D. Cal. 2020); *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2009).

Intervenor EFF counters that denying Uniloc's motion was a sound use of the district court's discretion.  EFF adds that the court conscientiously weighed Uniloc's submissions in support of sealing and concluded that they were insufficient to overcome the public's strong interest in access.

We conclude that the district court failed to follow our remand instructions to make particularized determinations as to whether the third-party licensing information sought to be sealed should be made public.  That failure was an abuse of discretion.  The first time this case appeared before us, "the district court failed to make findings sufficient to allow us to adequately assess whether it properly balanced the public's right of access against the interests of the third parties in shielding their financial and licensing information from public view."  *Uniloc 2017*, 964 F.3d at 1364.  We explained that "there is no indication

in the record that the court assessed whether any of the third-party information was protectable as a trade secret or otherwise entitled to protection under the law." *Id.* (internal quotation marks omitted). We thus remanded and instructed that the district court "make particularized determinations as to whether and, if so, to what extent, the materials of each of these parties should be made public." *Id.* Yet, on remand, the district court again neglected to make sufficient findings. Nowhere in the record does the district court discuss whether any of the third-party materials constitute protectable trade secrets. *See Decision.* For that reason, and because it is relevant to the protectability of the license information, we remand for the district court to carry out the examination this court instructed it to do.

We also disagree with the district court's statements purportedly supporting its decision concerning the public's right of access to information relating to patent licenses. The court stated that "[t]he public has an interest in inspecting the valuation of patent rights . . . particularly given secrecy so often plays into the patentee's advantage in forcing bloated royalties." *Decision* at 555. The court thus made an error of law in making a blanket ruling that the public has a broad right to licensing information relating to patents.

The public indeed does have an interest in patents, but it is an interest in ensuring that patents are not procured by fraud, or other improper means. *See U.S. v. Glaxo Grp. Ltd.*, 410 U.S. 52, 57–58 (1973) (discussing the public interest in free competition and ensuring that patents are not obtained by fraudulent means). This is because patents are to be granted only if they are valid, *i.e.*, they describe and claim inventions meeting the requirements of the law, inventions that are novel, not obvious, and described in an enabling manner.

The enforcement of patents is also imbued with the public interest. Litigants and their counsel are subject to Rule 11 of the Federal Rules of Civil Procedure, requiring that parties presenting a case perform an "inquiry reasonable under the circumstances" as to the legal and factual merits of the claim, and they are subject to sanctions for an exceptional case and for a frivolous appeal. Fed. R. Civ. P. 11. Moreover, a patent can be held to be unenforceable for inequitable conduct in its procurement. But no rule of law or binding precedent says that the public is generally entitled to know what consideration a patentee receives for licensing its patent.

The district court stated that patents are granted in derogation of the usual free flow of goods and ideas. It stated colorfully that "a patent owner is a tenant on a plot within the public realm of public knowledge, and a licensee a subtenant." *Decision* at 554. Those statements are incorrect, as patents are granted for inventions that, until their disclosure, did not constitute any flow of goods. Goods claimed in a patent, if the patent is valid, did not previously flow. Patents are granted for *new* inventions, those which did not flow in commerce before the invention. A properly-issued patent creates new land, keeping within the court's metaphor. It expands public knowledge.

The district court stated that the public has a strong interest in knowing the full extent of the terms and conditions involved in the exercise of its patent rights and in seeing the extent to which the patentee's exercise of the government grant affects commerce. But this is not an antitrust case or an FTC investigation involving unlawful restraint of trade or monopolization. It is a suit for patent infringement. Absent an issue raised by the parties concerning license rights and provisions, there is no public interest or entitlement to information concerning consideration for the grant of licenses. The parties are in agreement that license information here should be sealed and protected. The only differing voice has come from an

independent nonparty, appointed by the district court to advocate unsealing the information that neither party wished to unseal. But we have seen no citation of a rule of law providing a presumption of access in a patent infringement suit to information concerning consideration for the licensing of a patent.

An earlier issue in this case was a question of alleged indiscriminate oversealing in patent and commercial cases nationwide. For that reason, in the earlier appearance of this case in our court, we affirmed-in-part the district court's refusal to seal all the requested information and remanded for the limited purpose of assessing whether third-party licensing information should be sealed. But oversealing was no longer the issue on remand.

The district court did note that a key issue in this case was whether Uniloc had received at least $20 million in royalties needed under licensing agreements to provide it with standing to sue. But that fact can be proved without opening up all the licenses that the court granted access to.

Lastly, for the Fortress investment memorandum, any procedural failings of Uniloc and Fortress cannot justify unsealing the information of third parties. The district court should have considered whether the interests of the implicated third parties outweigh the public's interest in seeing individual licensing details that are not necessary for resolving this case.

We therefore vacate and remand for the district court to comply with this court's previous remand instructions.

## CONCLUSION

We have considered EFF's remaining arguments, but we find them unpersuasive. Because the district court failed to follow our previous remand instructions to make particularized determinations as to whether third-party licensing information should be sealed, we vacate the court's denial and remand for the court to perform that analysis.

## VACATED AND REMANDED

COSTS

No costs.

# United States Court of Appeals
# for the Federal Circuit

---

**UNILOC USA, INC., UNILOC LUXEMBOURG S.A.,**
*Plaintiffs-Appellants*

**UNILOC 2017 LLC,**
*Plaintiff*

**v.**

**APPLE INC.,**
*Defendant-Appellee*

**ELECTRONIC FRONTIER FOUNDATION,**
*Intervenor-Appellee*

---

2021-1568, 2021-1569, 2021-1570, 2021-1571, 2021-1573

---

Appeals from the United States District Court for the Northern District of California in Nos. 3:18-cv-00358-WHA, 3:18-cv-00360-WHA, 3:18-cv-00363-WHA, 3:18-cv-00365-WHA, 3:18-cv-00572-WHA, Judge William H. Alsup.

---

MAYER, *Circuit Judge*, dissenting.

The district court adhered to our remand instructions when it carefully weighed the public's right of access to court records against the interests of third-party patent licensees in shielding their licensing information from public view. The court's decision to deny the motion by Uniloc

USA, Inc., and Uniloc Luxembourg, S.A. (collectively, "Uniloc") to seal information related to its licenses with third parties was a sound exercise of discretion given that the dates and dollar amounts of those licenses went "to the heart of the primary dispute" between Uniloc and Apple Inc., which was whether Uniloc had generated sufficient licensing revenue to provide it with standing to sue. *Uniloc USA, Inc. v. Apple, Inc.*, 508 F. Supp. 3d 550, 555 (N.D. Cal. 2020) ("*District Court Decision*") (internal quotation marks omitted). Uniloc's third-party licensees, moreover, failed to demonstrate a compelling interest in keeping their licensing information confidential. *See id.* at 554. I therefore respectfully dissent.

The public's right of access to documents filed in connection with a dispositive pleading is sacrosanct. *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) (explaining that "the strong presumption of access to judicial records applies fully to dispositive pleadings, including motions for summary judgment and related attachments," given that "the resolution of a dispute on the merits, whether by trial or summary judgment, is at the heart of the interest in ensuring the public's understanding of the judicial process and of significant public events" (citations and internal quotation marks omitted)); *see also DePuy Synthes Prods., Inc. v. Veterinary Orthopedic Implants, Inc.*, 990 F.3d 1364, 1369 (Fed. Cir. 2021) (stating that the "longstanding right" of access to judicial records and documents "helps secure the integrity and transparency of the judicial process"); *In re Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1242 (11th Cir. 2020) ("A lawsuit is a public event. Parties who ask a court to resolve a dispute must typically walk in the public eye."); *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001) (explaining that "[t]he public's right of access extends beyond simply the ability to attend open court proceedings" and includes "a pervasive common law right to inspect and copy public records and documents, including judicial records and

documents" (citations and internal quotation marks omitted)). The right can be abridged only in certain narrow circumstances, and the party seeking to seal information bears the burden of providing "sufficiently compelling reasons for doing so." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). While "[m]any a litigant would prefer that the subject of [its] case . . . be kept from the curious (including its business rivals and customers)," those who "call on the courts . . . must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials." *Union Oil Co. v. Leavell*, 220 F.3d 562, 567–68 (7th Cir. 2000).

What constitutes a compelling reason to seal documents is a determination "best left to the sound discretion of the trial court." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978). Here, the district court did not abuse its discretion in concluding that Uniloc's third-party licensees failed to make out a compelling case for shielding their licensing information from public view. Notably, not a single licensee directly filed a request with the district court seeking to seal its licensing information. *See District Court Decision*, 508 F. Supp. 3d at 554. Instead, when this case was initially pending before the district court, "Uniloc solicited the views of all one hundred nine licensees regarding the sealing of their patent license details." *Id.* While thirty-one licensees requested that all or part of their licensing information be kept confidential, only thirteen licensees submitted declarations in support of their requests. *See id.*; J.A. 436–50, 805–37 (sealed third-party declarations).

These declarations, by and large, are vague and conclusory and fail to provide concrete evidence that the dissemination of licensing information would cause the licensees significant competitive injury in future licensing negotiations or that the licensing information in question otherwise qualifies as a trade secret. *See* J.A. 436–50, 805–37; *see also Total Recall Techs. v. Luckey*, No. 21-15590, 2021

WL 5401664, at *1 (9th Cir. Nov. 18, 2021) (affirming a district court's order denying seven motions to seal where the party seeking sealing failed to provide "specific" or "compelling" evidence for doing so); *DePuy*, 990 F.3d at 1373 (affirming a district court order unsealing purportedly confidential business information where the declarations filed by the party seeking to prevent disclosure failed to address how making the information public "would harm its proprietary and competitive business interests" (citations and internal quotation marks omitted)); *Kamakana*, 447 F.3d at 1182 (explaining that a party's "conclusory"declarations about the confidential nature of certain documents did "not rise to the level of 'compelling reasons' sufficiently specific to bar the public access to the documents"). Indeed, only one of the publicly available declarations even uses the term "trade secret" and that declaration broadly, and without meaningful support, states that all the company's "financial records" qualify as trade secrets. J.A. 438. Importantly, moreover, none of the declarations adequately explain why redacting the names of the third-party licensees—but fully disclosing the dates and dollar amounts of their licenses with Uniloc—would not serve to eradicate any even arguable concern regarding the disclosure of trade secret information. *See* N.D. Cal. Civ. Local R. 79-5(b) (2018) (emphasizing that any motion to seal "must be *narrowly tailored* to seek sealing only of sealable material" (emphasis added)).

The fact that other courts, under other circumstances, have granted motions to seal patent licensing information does not mean that the district court abused its discretion in declining to do so here. This case involves the unusual situation in which Uniloc, the party seeking the sealing order, forfeited its right to keep its licensing information confidential because its "original sealing request was grossly excessive and its flouting of Local Rule 79-5 particularly flagrant." *Uniloc 2017 LLC v. Apple, Inc.*, 964 F.3d 1351, 1361 (Fed. Cir. 2020).

I disagree with this court's conclusion that the district court "made an error of law in making a blanket ruling that the public has a broad right to licensing information relating to patents." *Ante* at 6. The public presumptively has a broad right of access to *all* information filed with a court in connection with a dispositive motion, and this includes patent licensing information. *See, e.g.*, *Kamakana*, 447 F.3d at 1180 (explaining that "judicial records are public documents almost by definition, and the public is entitled to access by default").

"The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification." *Union Oil*, 220 F.3d at 568. Because the third-party licensees failed to supply compelling reasons for overriding the strong presumption in favor of public access, I would affirm.